IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIRK D. ROBINSON,<br><br>                Plaintiff,<br><br>      v.<br><br>TIM MILLER, Case Manager, Programming Director; MESSNER, Case Manager; OLIMI, Member of Parole Board; and GISSLER, Member of Parole Board;<br><br>                Defendants. | 8:24CV242<br><br>MEMORANDUM<br>AND ORDER |

      Plaintiff Kirk D. Robinson, an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"), filed a Complaint (Filing No. 1) on June 21, 2024, and paid the full filing fee. The Court now conducts an initial review of plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915A.

I.    SUMMARY OF COMPLAINT

      At the time plaintiff filed his Complaint, he was confined at the Reception and Treatment Center ("RTC") (Filing No. 1 at 2), but he has since been moved to the Tecumseh State Correctional Institution ("TSCI") (Filing No. 10). Plaintiff brings this action for an alleged Eighth Amendment violation pursuant to 42 U.S.C. § 1983 against NDCS Case Managers Tim Miller and Messner, and two Nebraska Parole Board members, Olimi and Gissler, all in their individual capacities. (Filing No. 1 at 2–3.)

      As plaintiff alleges, he attended a meeting with the Parole Board at the RTC on June 3, 2024, approximately two years before his parole eligibility date, at which Olimi, Gissler, and Miller were present. Plaintiff was asked about certain programming the Parole Board's records indicated he was to take, and plaintiff "informed the board that their records were incorrect due to an email . . . that shows such programming was to be

considered null and void." (Filing No. 1 at 5.) Plaintiff attached a copy of this "email" to his Complaint, consisting of a March 21, 2024, NDCS memorandum regarding the "Violence Reduction Program (VRP)" which indicates NDCS decided to discontinue the VRP based on the results of an evaluation and, "[c]onsequently, all prior recommendations related to VRP, including 'pending CVORT' are now null and void." (Filing No. 1 at 16.) The document further indicates that "[t]he Board of Parole has been notified of this change," and as NDCS identifies "additional assessments and treatment programming options available to better prepare individuals for parole, the Board will be apprised and schedule reviews or hearings accordingly." (Filing No. 1 at 16.) Plaintiff alleges Miller denied any knowledge of this email and "was deliberately indifferent by not removing invalid programming from [his] record thereby subjecting [Plaintiff] to an unfair and biased meeting with the Parole Board." (Filing No. 1 at 13.) Plaintiff similarly claims Messner was deliberately indifferent by not ensuring that plaintiff's record was correct and invalid programming was removed when she conducted his reclassification in March to April of 2024. (Filing No. 1 at 13.)

As a result of the June 3, 2024, meeting, plaintiff alleges he was "denied the ability to get closer to reentry to society and will not see the parole board for at least another year." (Filing No. 1 at 5.) Plaintiff refers to an Offender Board Review Notice attached to his Complaint which shows that, as a result of the June 3, 2024 review, the Parole Board deferred plaintiff's case to a June 2025 Board Review for the reason that plaintiff's "release will have a very significant and quantifiable effect on institutional discipline." (Filing No. 1 at 18.) The Parole Board further recommended that Plaintiff "[f]ollow the rules and programming/treatment recommendations of the Nebraska Department of Correctional Services." (Filing No. 1 at 18.) Plaintiff accuses Olimi and Gissler of "conduct[ing] an unfair and biased review even after being informed their records were incorrect" and of retaliating against plaintiff for all of the lawsuits he has filed in this Court "regarding the improper actions of the [NDCS]." (Filing No. 1 at 13–14.)

2

As relief, plaintiff seeks $50,000,000 in punitive damages as he is "being punished for actually doing what [he] thought was right" and being made "to suffer" because "[s]omebody didn't do their job." (Filing No. 1 at 5.)

## II.   STANDARD OF REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to nudge[] their claims across the line from conceivable to plausible, "or their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

#### A. Eighth Amendment

Liberally construed, plaintiff asserts that defendants' actions in conducting an unfair and biased parole review based on incorrect records and deferring his next parole review for a year violated his Eighth Amendment right to be free from cruel and unusual punishment. (Filing No. 1 at 3.) However, nothing in the Complaint suggests that defendants' actions constitute cruel and unusual punishment. As plaintiff alleges, he is not eligible for parole for almost another two years, and there is no indication that defendants' actions extended the duration of plaintiff's sentence beyond what is authorized. *See Williams v. Knipp*, No. 2:11-CV-2181 GEB KJN, 2012 WL 2521938, at *6 (E.D. Cal. June 27, 2012) (denying petitioner's Eighth Amendment claim based on board's denial of parole where petitioner "failed to demonstrate that he is serving a sentence longer than that intended by state statute"). Accordingly, Plaintiff's Eighth Amendment claim is without merit and must be dismissed.

#### B. Fourteenth Amendment Due Process

Plaintiff's claims that defendants improperly considered incorrect records in his parole review and deferred his next parole review for a year are more properly construed as alleging violations of his due process rights under the Fourteenth Amendment. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, plaintiff must demonstrate that he has been deprived of a liberty interest in order to

successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

"The general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808 (internal quotation marks and quotation omitted) (finding that termination from a drug treatment program that was mandatory for parole, but discretionary with prison officials, was not outside of the punishment originally imposed). A state-created liberty interest arises when a statute or regulation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Morrissey v. Brewer*, 408 U.S. 471 (1972). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

Here, plaintiff has no liberty interest in parole, or even the *possibility* of parole, arising from the Due Process Clause. *See Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Nebraska Penal & Corrections*, 442 U.S. 1, 9–11 (1979)). Also, to the extent plaintiff alleges defendants failed to properly follow state policy and procedure, he fails to state a due process claim under section 1983 as there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[The plaintiff's] only argument is that the state failed to follow its own procedural rules and thus failed to afford him the due process of law mandated by the Constitution. But, as we have stated above, the Due Process Clause does not federalize state-law procedural requirements.").

In addition, plaintiff has not demonstrated that he has a state-created liberty interest in parole. He cannot show that he has suffered an atypical or significant hardship as a

5

result of the Parole Board's consideration of incorrect records regarding his programming recommendations or in its decision to defer another parole review for one year. At most, plaintiff's allegations suggest only that he will not be paroled early, which is certainly neither atypical nor significant in regular prison life. *See Deas v. Kohl*, No. 8:15CV35, 2015 WL 4601523, at *3 (D. Neb. July 29, 2015) ("His only potential hardship is that he may not be paroled, and such a possibility is neither atypical [n]or significant in regular prison life. That is, [plaintiff] may simply be required to serve out the remainder of his sentence under the same conditions as other prisoners."). Plaintiff admits that he is not yet parole-eligible, and, in any case, taking advantage of recommended programming and other self-improvement opportunities is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83–1,114(2). Defendants also still have time to assess plaintiff's programming recommendations and correct them if need be. Importantly, though, defendants' failure to consider the correct records at this juncture will not inevitably affect the duration of plaintiff's sentence as plaintiff cannot demonstrate that the Board's review of the correct records mandate his parole.

Accordingly, to the extent that plaintiff's Complaint can be construed as asserting due process claims against defendants, those claims must be dismissed for failure to state a claim upon which relief may be granted.

### C.  Parole Board Members' Immunity

Lastly, the Court also finds that plaintiff's claims for damages against Parole Board members Olimi and Gissler are barred by immunity. "Parole Board members are absolutely immune from suit when acting within their official duties for the reason that 'parole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges.'" *Green v. Crawford*, No. 08-4071-CV-C-NKL, 2009 WL 161695, at *2–3 (W.D. Mo. Jan. 20, 2009) (internal citation omitted) (citing *Gale v. Moore*, 763 F.2d 341, 344 (8th Cir. 1985) and quoting *Evans v. Dillahunty*, 711 F.2d 828, 831 (8th Cir. 1983)). *See also Mayorga v. Missouri*, 442 F.3d 1128, 1131 (8th Cir. 2006) (absolute

6

immunity applies to prisoner's claim, even though Parole Board improperly classified him resulting in his parole denial). Thus, plaintiff's claims against Olimi and Gissler must be dismissed as they are entitled to absolute immunity.[1]

## IV. CONCLUSION

Upon review, the Court concludes that plaintiff's Complaint fails to state a plausible claim for relief under either the Eighth Amendment or the Fourteenth Amendment's Due Process Clause, and Parole Board members Olimi and Gissler are absolutely immune from Plaintiff's claims for damages. Accordingly, the Court will dismiss plaintiff's Complaint pursuant to 28 U.S.C. § 1915A without prejudice and without leave to amend as further amendment would be futile.

IT IS THEREFORE ORDERED:

1. This matter is dismissed without prejudice for failure to state a claim upon which relief may be granted.

2. Judgment shall be entered by separate document.

Dated this 27th day of November 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

[1]To the extent Plaintiff asserts Olimi and Gissler retaliated against him for filing several lawsuits in violation of the First Amendment (Filing No. 1 at 13–14), absolute immunity would also bar such claims as the only purported adverse action is Olimi's and Gissler's decision to defer Plaintiff's next parole review. In any case, Plaintiff alleges no facts to suggest "the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).